PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES A. DAY, JR., | ) | |
| | ) | CASE NO. 4:20CV1583 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ANNETTE CHAMBERS-SMITH, | ) | |
| DIRECTOR OF THE OHIO | ) | |
| DEPARTMENT OF REHABILITATION & | ) | |
| CORRECTION, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 3] |

*Pro Se* Plaintiff James A. Day, Jr., an Ohio prisoner incarcerated at the Northeast Ohio Correctional Center ("NEOCC"), has filed a civil rights action under 42 U.S.C. § 1983 against Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation & Correction ("ODRC"). *See* Complaint (ECF. No. 1). For the following reasons, this action is dismissed.

### I. Background

On July 17, 2020, the Court received for filing the Complaint (ECF. No. 1), along with Motions to Proceed *in Forma Pauperis* (ECF No. 2) and for Appointment of Counsel (ECF No. 3). On August 13, 2020, a Senior Assistant Attorney General filed a Notice of Appearance on Behalf of Interested Party State of Ohio, which represents that Defendant is a state employee and state agent and therefore constitutes the State's interest. ECF No. 4 at PageID #: 44.

Plaintiff alleges he faces the "imminent threat of death" from contracting COVID-19 while confined at NEOCC. ECF No. 1 at PageID #: 1, ¶ 1. He contends that Defendant's

(4:20CV1583)

"actions and inactions" in response to the COVID-19 pandemic in Ohio prisons have violated his constitutional right to be free from cruel and unusual punishment.  ECF No. 1 at PageID #: 14, ¶ 51.  Plaintiff also contends that Defendant "fail[ed] to provide equal protection for the Plaintiff," asserting that Defendant's safety measures are not ineffective.  According to Plaintiff, Defendant's actions in selecting an "ineffective medical remedy of hand washing, face masks and quarantine after . . . symptoms [have] presented," rather than "the proven medical treatment of social distancing" have violated his equal protection rights.  ECF No. 1 at PageID #: 15, ¶ 57.

Plaintiff acknowledges in the Complaint (ECF. No. 1) that Defendant has implemented a safety plan and COVID-19 operating procedures "for ODRC correctional institutions [statewide]," including suspending visitations, issuing face masks, and quarantining inmates demonstrating symptoms of the virus or who have been exposed to the virus, and she has implemented an emergency reprieve through the Ohio Adult Parole Authority ("APA").  ECF No. 1 at PageID #: 7,8, and 10.  He contends, however, that Defendant's measures are inadequate, and the APA has not granted any emergency reprieve since June 2020.  ECF No. 1 at PageID #: 8 and 9.  According to Plaintiff, Defendant's safety plan and "implemented procedures" and her failure to order statewide COVID-19 testing have failed to slow the spread of COVID-19, and in fact, they have resulted in a violation of his constitutional right to adequate medical care.  ECF No. 1 at PageID #: 14, ¶ 50.  He asserts Defendant has demonstrated deliberate indifference to the imminent threat of death, particularly with respect to medically-vulnerable inmates.  ECF No. 1 at PageID #: 16.

Plaintiff seeks the following relief:  immediate release to home confinement; an order requiring all Ohio inmates to be tested for COVID-19; an order that the APA "lo[o]sen the

2

(4:20CV1583)

criteria for emergency repr[ieve];" and, $50,000 in punitive damages.  He also seeks injunctive

relief and the appointment of counsel.  ECF No. 1 at PageID #: 16-17.

## II.  Standard for Dismissal

By separate order, the Court has granted Plaintiff's Motion to Proceed *in Forma Pauperis*

(ECF No. 2).  *Pro se* pleadings are liberally construed and held to less stringent standards than

formal pleadings drafted by lawyers.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982).  Federal

district courts, however, are expressly required under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to

screen all *in forma pauperis* actions and to dismiss before service any such action that the Court

determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief.

To survive scrutiny under these statutes, a *pro se* complaint must set forth sufficient

factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *See Hill v.*

*Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the Fed. R. Civ. P. 12(b)(6) dismissal

standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007), governs dismissals under §§ 1915(e)(2)(B) and 1915A).  The factual

allegations in the pleading "must be enough to raise a right to relief above the speculative level

. . . on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at

555 (citations omitted).  The Court is "not bound to accept as true a legal conclusion couched as

a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A claim has facial plausibility when there is enough factual content present to allow "the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

(4:20CV1583)

*Iqbal*, 556 U.S. at 678.  When a claim lacks "plausibility in th[e] complaint," that cause of action

fails to state a claim upon which relief can be granted.  *Twombly*, 550 U.S. at 564.

When reviewing a complaint, the Court must construe the pleading in the light most

favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)

(citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)).  That said, the courts

are not required to conjure unpleaded facts or construct claims against defendants on behalf of a

*pro se* plaintiff.  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted);

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

### III.  Law and Analysis

Plaintiff brings this claim under 42 U.S.C. § 1983.  To state a claim under § 1983, the

plaintiff must show that a person acting under color of state law deprived him of rights,

privileges, or immunities secured by the Constitution or laws of the United States.  *See Gomez v.*

*Toledo*, 446 U.S. 635, 640 (1980) (citation omitted).  The plaintiff must also allege that "the

defendants were personally involved in the alleged deprivation of federal rights."  *Frazier v.*

*Michigan*, 41 Fed.Appx. 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251

(6th Cir. 1983)).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Upon review, the Court finds the Complaint

(ECF. No. 1) must be dismissed for failure to state a plausible federal civil rights claim upon

which relief may be granted against Defendant.

4

(4:20CV1583)

**A.**

To the extent Plaintiff seeks immediate release to home confinement, his claim fails.  It is well-established that relief in a civil rights action is not available where a prisoner seeks immediate or speedier release from his incarceration.  Rather, a writ of habeas corpus is a prisoner's sole federal remedy for seeking release from incarceration.  *See Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (seeking immediate or speedier release from confinement is "the heart of habeas corpus"); *Dotson v. Wilkinson*, 329 F.3d 463, 468 (6th Cir. 2003) ("[A] habeas petition is the proper vehicle for seeking release from incarceration.").  Therefore, the Complaint (ECF. No. 1) fails to state a plausible claim under § 1983 to the extent Plaintiff seeks immediate release from incarceration to home confinement.

**B.**

The Complaint (ECF. No. 1) alleges that Defendant, in her official capacity as Director of the ODRC, violated his constitutional rights.  The Eleventh Amendment to the United States Constitution is a bar to the imposition of liability upon state agencies and state officers sued in their official capacities.  *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

Under the Eleventh Amendment, federal courts lack jurisdiction to hear suits by private citizens against a state unless the state explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, abrogates the States' sovereign immunity.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  Ohio has not waived its sovereign immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012).

5

(4:20CV1583)

An entity acting as an "arm of the State" enjoys Eleventh Amendment immunity from federal suit to the same extent as the state itself.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).  And this Eleventh Amendment immunity extends to state officials sued in their official capacity because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office" and is therefore "no different from a suit against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

Here, the ODRC is clearly a state agency and entitled to Eleventh Amendment immunity. Defendant, as Director of the ODRC, is therefore also entitled to immunity.  Accordingly, any claims raised against Defendant in her official capacity and seeking monetary damages must be dismissed.

## C.

To the extent Plaintiff alleges Defendant is personally liable for any purported constitutional violations, this claim also fails.  "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."  *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).  A plaintiff must allege "personal involvement of the defendant in causing plaintiff's injury."  *Dotson v. Wilkinson*, 477 F. Supp.2d 838, 847 (N.D. Ohio 2007) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)).  A party therefore cannot be held liable under § 1983 "unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct."  *Id.* (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

6

(4:20CV1583)

### D.

Prison conditions are subject to constitutional scrutiny under the Eighth Amendment, but in order to make out a claim of cruel and unusual punishment, a prisoner must demonstrate both objective and subjective components. *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020). A prisoner must show that he was subjected to an objectively serious prison condition to which a defendant prison official acted with subjective "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component of a claim requires a prisoner to show that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. An official may not be held liable if she responded reasonably to a known risk, even if the harm ultimately was not averted. *Id.* at 826.

In *Wilson*, the Sixth Circuit examined the conditions at Elkton Federal Correctional Institution ("Elkton") (in the context of a 28 U.S.C. § 2241 action) and concluded that a class of medically-vulnerable inmates was not likely to succeed on the merits of the required subjective component of an Eighth Amendment claim based on COVID-19 circumstances when the Bureau of Prisons ("BOP") implemented similar measures in response to COVID-19 to those Plaintiff acknowledges here, including screening inmates for symptoms, cancelling visitations, quarantining new inmates, providing masks, and implementing cleaning procedures. 961 F.3d at 841. The Sixth Circuit held that the BOP "responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton," and therefore, the inmates could not demonstrate the required deliberate indifference to meet the subjective element of their claim. *Id.* at 840. The Court also found that given the BOP's "measures to prevent the spread of COVID-19," its

(4:20CV1583)

"failure to make robust use of transfer, home confinement, or furlough," including for medically-vulnerable inmates, did not constitute deliberate indifference within the meaning of the Eighth Amendment.  *Id.* at 844.

Here, on the face of the Complaint (ECF. No. 1), Plaintiff acknowledges that Defendant has taken some actions in response to the risks presented by COVID-19.  *See, e.g.*, ECF No. 1 at PageID #: 7,8, and 10.  These procedures are similar to the procedures recently considered by the Sixth Circuit in *Wilson*.  Although Plaintiff disagrees with the adequacy of the actions Defendant has taken, and desires that Chambers-Smith do more, Day has not alleged facts sufficient to demonstrate that Defendant acted with "deliberate indifference" within the meaning of the Eighth Amendment.  *See id.*; *see also Williams-Bey v. Smith*, No. 1:20CV828, 2020 WL 1954140, at *2 (N.D. Ohio, April 23, 2020) (Oliver, J.) (dismissing § 1983 action alleging deliberate indifference relating to COVID-19 circumstances).

Furthermore, Plaintiff has not alleged any facts suggesting that Defendant had any personal involvement with a decision to deny him emergency release on parole.  Regardless, the granting of parole under Ohio law is "purely discretionary," and a convicted person has no constitutionally-protected liberty interest in release on parole before the expiration of a valid sentence.  *Bell v. Anderson*, 301 Fed.Appx. 459, 461 (6th Cir. 2008).

**E.**

Finally, the Complaint (ECF. No. 1) fails to allege a plausible equal protection claim. Plaintiff alleges that "Defendant has failed to provide adequate safety and equal protection" for ODRC inmates and staff.  ECF No. 1 at PageID #: 15, ¶ 57.  Plaintiff does not, however, assert he is a member of a suspect class or that he was treated less favorably than a similarly-situated

8

(4:20CV1583)

inmate without a rational basis. *See Ctr. For Bio-Ethical Reform, Inc. V. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.") (citation and internal quotation marks omitted). And prisoners are not a "protected class" for equal protection purposes. *Dotson*, 477 F. Supp.2d at 851 (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)). Therefore, Plaintiff's purported equal protection claim fails on its face.

## IV. Conclusion

Based on the foregoing, the Complaint (ECF. No. 1) is dismissed in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A. In light of this dismissal, Plaintiff's Motion for Appointment of Counsel (ECF No. 3) is denied as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

 February 4, 2021             /s/ Benita Y. Pearson
Date                        Benita Y. Pearson
                            United States District Judge

9